UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL C. EVANS #770290,                     Case No. 2:24-cv-00036

                    Plaintiff,                Hon.  Jane M. Beckering
                                              U.S. District Judge

        v.

P. ORDIWAY, et al.,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendant Tamlyn's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies.  (ECF No. 16.)  Evans did not file a response.

State prisoner Michael Evans filed a complaint under 42 U.S.C. § 1983 alleging that the two Defendants – Chippewa Correctional Facility (URF) Corrections Officer (CO) Ordiway and CO Tamlyn – violated his First and Fourteenth Amendment rights.  (ECF No. 1.)

Evans says that on May 15, 2022, CO Ordiway told him to "take that Kufi off", while he was in the chow hall.  (*Id.*, PageID.3.)  Evans says that he replied that he was allowed to wear his Kufi because he is a practicing Muslim.  (*Id.*)  CO Ordiway allegedly responded that she would not stop asking about the Kufi.  (*Id.*)  When Evans stated he would file a grievance, CO Ordiway stated that if she saw him wearing a

Kufi on the yard, chow hall, or anywhere outside of religious service, she would confiscate it.  (*Id.*, PageID.4.)  Evans says that he filed a grievance.  (*Id.*)

Evans alleges that two days later, on May 17, 2022, CO Tamlyn approached him in the chow hall and instructed Evans and another Muslim prisoner to take off their hats.  (*Id.*)  Evans says that he informed CO Tamlyn that under policy he was allowed to wear a Kufi.  (*Id.*)  CO Tamlyn allegedly ordered them to leave the chow hall.  (*Id.*)

Evans says that on May 20, 2022, he entered the chow hall wearing his Kufi. CO Ordiway ordered him to remove the Kufi and to provide his identification card. Evans says he complied with the order.  (*Id.*)  Evans says that CO Ordiway confiscated his Kufi and issued him a misconduct ticket for disobeying a direct order. Evans says that he filed a grievance.  (*Id.*)

Evans says that on May 30, 2022, he was wearing another Kufi while he was leaving chow hall.  (*Id.*, PageID.5.)  CO Ordiway followed him outside and conducted a pat-down.  (*Id.*)  CO Ordiway confiscated Evans's Kufi and issued three misconduct tickets for contraband.  (*Id.*)  Evans alleges that he attended the hearing with proof that he purchased the Kufi, but the hearing officer told him to accept ten days loss of privileges (LOP) or he would double the punishment after a hearing.  (*Id.*)  Evans accepted the ten days of LOP for fear of retaliation.  (*Id.*)

Only Defendant CO Tamlyn moves for summary judgment.  CO Tamlyn argues that Evans did not exhaust his administrative remedies by naming Tamlyn in a properly exhausted grievance through Step III of the MDOC grievance process.

A review of the records before the Court indicates that Evans filed three grievances naming CO Ordiway, but that he never named CO Tamlyn in his grievance filings.  In the opinion of the undersigned, Evans failed to exhaust a grievance against CO Tamlyn.  Therefore, it is respectfully recommended that the Court grant CO Tamlyn's motion for summary judgment and dismiss CO Tamlyn from this case.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

4

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy

6

Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD.  The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust

administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.    *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id*. at 596.

## IV.  Analysis

CO Tamlyn provided a Step III grievance report with his motion for summary judgment.  (ECF No. 17-3.)  The affidavit included with the report states that it "is taken from the [MDOC's] database that tracks all prisoner/parolee grievances filed at Step III, which have been responded to at Step III.  (*Id.*, PageID78.)  The single summary page from that report is shown below.

| MDOC Prisoner Step III Grievance Report | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1/1/2018 to Present | | | | | | | | | | |
| Prisoner #:  770290 | Last Name:  Evans | | | | First Name:  Michael | | | | | |
| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
| 8/4/2022 | URF-22-06-0877-17D | 17D | 8 | 6/1/2022 | ☐ | ☐ | ☑ | ☐ | ☑ | 8/17/2022 |
| Notes: | | | | | | | | | | |
| 7/7/2022 | URF-22-05-0766-17D | 17D | 8 | 5/17/2022 | ☐ | ☐ | ☑ | ☐ | ☑ | 7/18/2022 |
| Notes: | | | | | | | | | | |
| 7/7/2022 | URF-22-05-0827-27A | 27A | 8 | 5/23/2022 | ☐ | ☐ | ☐ | ☑ | ☑ | 7/18/2022 |
| Notes: | | | | | | | | | | |

(*Id.*, PageID.80.)

As noted above, the events in this case took place in May 2022.  Via this report, Tamlyn has shown that Evans filed three grievances and pursued them through Step III of the MDOC grievance process during the relevant time period: Grievances <u>URF-22-06-0877-17d</u>, <u>URF-22-05-0766-17d</u>, <u>URF-22-05-0827-27a</u>.  (*Id.*)

---

For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

Tamlyn also included copies of the actual grievances with his motion.   In grievance <u>URF-22-06-0877-17d</u>, Evans asserted at Step I that CO Ordiway harassed him, in violation of his religious rights, on May 30, 2022, by asking him to take off his Kufi and searching him.  (ECF No. 17-3, PageID.84.)

In grievance <u>URF-22-05-0766-17d</u>, Evans asserted at Step I that, on May 15, 2022, CO Ordiway ordered him to take off his Kufi even though prison policy allows him to always wear it.  (*Id*., PageID.90.)  Evans asserted that CO Ordiway continued to harass him due to his Muslim religious beliefs.  (*Id*.)

In grievance <u>URF-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-27a</u>, Evans asserted at Step I that, on May 20, 2022, CO Ordiway ordered him to take his Kufi off while he was inside the chow hall. Kufi says that CO Ordiway confiscated his Kufi.  (*Id*., PageID.95.)

Evans did not name CO Tamlyn in any of these grievances.

Although he did not respond to Tamlyn's motion for summary judgment, Evans addressed exhaustion in his *unverified* complaint.  There, he stated the following:

> EXHAUSTION:
> 9. The Plaintiff did exhaust his administrative remedies against Defendant P. Ordiway-URF-2205-0766-17D, and URF-2205-0527-27A by filing all steps to step III.
> 10. ==The Plaintiff did exhaust his administrative remedies against Defendant Tamlyn - URF-2205-0812-17D by filing all steps to step III.==

(ECF No. 1, PageID.2.)

Evans has not provided the Court with a copy of the grievance he says exhausted his claims against Tamlyn.  And, more importantly, that grievance does

not appear on the Step III grievance report, which lists all grievance filed through Step III of the MDOC grievance process.

Therefore, it is the opinion of the undersigned that CO Tamlyn should be dismissed from this case due to Evans's failure to name CO Tamlyn in a grievance based upon the events asserted in his complaint, and to exhaust that grievance through the MDOC grievance process.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant Tamlyn's motion for summary judgment due to Evans's failure to exhaust his administrative remedies by naming CO Tamlyn in a grievance.

If the Court accepts this recommendation, the claims against CO Ordiway will remain.

Dated:   October 1, 2024                        /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).